UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE,<br><br>                              Plaintiff,<br><br>        v.<br><br>COUNTY OF ROCKLAND *et al.*,<br><br>                              Defendants. | No. 21-CV-6751 (KMK)<br><br>OPINION & ORDER |

Appearances:

Steven Alan Metcalf, II, Esq.
Metcalf & Metcalf, P.C.
New York, NY
*Counsel for Plaintiff*

Matthew Ryan Hughes, Esq.
Robert Benjamin Weissman, Esq.
Saretsky Katz & Dranoff, LLP
Elmsford, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

Jane Doe ("Plaintiff"), formerly incarcerated at the Rockland County Jail, brings the

instant Action, pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985 and state law, against the County

of Rockland (the "County")[1] and its employees Correction Officer Christopher Taggart

("Taggart"), Corrections Officer John Kezek ("Kezek"), and Jane Doe/John Does 1–4

(collectively, "Defendants").  (*See* Compl. (Dkt. No. 1-1).)  Plaintiff alleges that, while

incarcerated at the Rockland County Jail, Defendants violated her rights under the Fifth, Eighth,

---

[1] Plaintiff also sues the County as the "Rockland County Sheriff's Office-Corrections Division," the "Rockland County Correctional Center," and the "Rockland County Sheriff's Office."  (*See* Compl. (Dkt. No. 1-1).)

and Fourteenth Amendments and New York state law in connection with an incident involving sexual assault.  (*See id.*)

Before the Court is the County's Motion To Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion to Dismiss"), (*see* Not. of Mot. To Dismiss (Dkt. No. 14)), and Plaintiff's Motion To Amend the Complaint Pursuant to Federal Rule of Civil Procedure 15(a) (the "Motion To Amend"), (*see* Not. of Mot. To Amend (Dkt. No. 23)).  For the following reasons, Plaintiff's Motion To Amend is granted, and the County's Motion To Dismiss is denied as moot.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Complaint and are taken as true for the purpose of resolving the instant Motions.

At the time of the events relevant to this Action, Plaintiff was incarcerated at Rockland County Jail.  (Compl. ¶¶ 23–24.)  On November 27, 2019, Defendant "Mick" [2] ordered a shift lock of eight-hours for Plaintiff for allegedly having a hair tie.  (*Id.* ¶ 27.)  Mick also ordered Plaintiff to clean the drains located in the yard.  (*Id.* ¶ 28.)  While Plaintiff was cleaning the drains, Kezek and another inmate made sexual references toward Plaintiff.  (*Id.*)  After cleaning the drains, Plaintiff was locked into her cell because she was still on shift lock.  (*Id.* ¶ 29.)

Kezek then approached Plaintiff's cell, and stated in substance that the pictures Plaintiff had on her cell desk were the same photos that she had posted on her Instagram account.  (*Id.*)  Kezek had mentioned Plaintiff's Instagram account before, but it was the first time Kezek stated

---

[2] In the Complaint, Plaintiff refers to a Defendant by the name of "Mick", but the Court notes that Defendant "Mick" is not named in the case caption.  (*See generally* Compl.)

that he "did things to [Plaintiff's] photos on his time off." (*Id.*) Kezek visibly had an erection as he spoke about Plaintiff's Instagram. (*Id.*) Kezek reenacted how Plaintiff was bending over to clean the pipes. (*Id.*) Kezek then had Mick unlock Plaintiff's cell door. (*Id.* ¶ 31.) Kezek stood in Plaintiff's cell doorway, took out his penis, and "jerked it" for 40 to 60 seconds, zippered his pants back up and closed the door. (*Id.*)

Plaintiff alleges that she did not immediately report these incidents, because she "became scared and did not want to be retailed against." (*Id.* ¶¶ 30, 32.) Plaintiff ultimately decided to report the incident to the jail chaplain, and noticed that lieutenants and sergeants "began treating Plaintiff differently." (*Id.* ¶ 33.) On December 12, 2019, Plaintiff reported the incident to her psychiatrists after she experienced anxiety attacks and continued nightmares about being raped and stabbed. (*Id.* ¶ 34.)

After Plaintiff reported, "word spread throughout the jail" about the incident. (*Id.* ¶ 35.) Taggart approached Plaintiff and told her that "other officers are making fun of Kezek." (*Id.* ¶ 36.) On or about December 14, 2019, Plaintiff made a written formal complainant against Kezek. (*Id.* ¶ 37.) Less than a month later, Plaintiff was labeled as "a rat" and various corrections officers called her a rat in Spanish, which was heard by other prisoners. (*Id.* ¶¶ 38–39.) Officers refused to provide Plaintiff necessary daily supplies. (*Id.*) Plaintiff was also allegedly "summoned to different private rooms and video and tape recorded." (*Id.* ¶ 40.)[3] During this period, Plaintiff was subject to the interaction with Kezek during his shifts. (*Id.* ¶ 41.) Plaintiff alleges that this caused her "greater anxiety and daily concern for her own safety." (*Id.* ¶ 49.)

---

[3] The Court notes that the circumstances under which Plaintiff was allegedly "video and tape recorded" are unclear.

Plaintiff alleges that shortly after the incident with Kezek, Plaintiff began an intimate relationship with Taggart, another corrections officer.  (*Id.* ¶ 43.)  Plaintiff alleges that at the time she entered into this relationship, she was in "an extremely vulnerable position as a female prisoner who complained about a male officer being sexually appropriate," and Taggart "fooled Plaintiff into thinking that Taggart cared about her."  (*Id.*)  Plaintiff alleges that Taggart made Plaintiff "feel as if Taggart was looking out for Plaintiff's safety."  (*Id.*)  Taggart forced Plaintiff to do sexual favors for him and pose naked in sexual positions for him.  (*Id.* ¶ 45.)  In return, Taggart smuggled Plaintiff contraband such as alcohol.  (*Id.* ¶ 46.)  Taggart forced Plaintiff to call him on his "burner" phone when he was not on shift, to keep him posted as to what was occurring.  (*Id.*)  Plaintiff alleges that Taggart accumulated information about Plaintiff's family and visited them in order to gather information to "hold over [Plaintiff's] head."  (*Id.* ¶ 46.)

Plaintiff states that ultimately, in connection with the allegations in this matter, Taggart was indicted in July 2020 on two felony counts of promoting prison contraband and several misdemeanor counts of official misconduct.  (*Id.* ¶ 48.)  Taggart was sentenced to two years of probation and resigned as a corrections officer.  (*Id.*)

On February 20, 2020, Plaintiff was transferred to Orange County Jail.  (*Id.* ¶ 49.) Plaintiff alleges that "word" about her relationship with Taggart "spread fast," and she was again labeled as "a rat" and received threats from other inmates.  (*Id.* ¶¶ 44, 49.)  Plaintiff alleges that she continues to live in fear due to these threats.  (*Id.* ¶ 49.)

<u>B.  Procedural History</u>

Plaintiff filed this Action in the Supreme Court of the State of New York for Rockland County on May 20, 2021.  (Dkt. No. 1-1.)  Defendants removed the case to federal court on August 10, 2021.  (Dkt. No. 1.)  On September 1, 2021, Rockland County filed a pre-motion

4

letter indicating the grounds on which they sought to move to dismiss the Complaint.  (Dkt. No. 3.)  On September 29, 2021, the Court adopted a briefing schedule.  (Dkt. No. 6.)  After receiving an extension, (*see* Dkt. No. 9), the County filed its Motion To Dismiss and accompanying papers on November 15, 2021, (Dkt. Nos. 14–17).  On January 8, 2022, after receiving an extension, (*see* Dkt. No. 21), Plaintiff filed her Opposition, (Dkt. No. 22).

On January 10, 2022, Plaintiff filed a Motion To Amend the Complaint, along with a Proposed Amended Complaint ("PAC").  (Dkt. No. 23-3.)  On January 27, 2022, the Court adopted a briefing schedule for Plaintiff's Motion To Amend.  (Dkt. No. 25.)  After receiving an extension, (*see* Dkt. No. 27), the County filed a Reply in support of their Motion To Dismiss and in Opposition to Plaintiff's Motion To Amend, as well as accompanying papers on February 18, 2022, (Dkt. Nos. 28, 29).  After receiving an extension, (Dkt. No. 33), Plaintiff filed a Reply in support of her Motion To Amend on March 11, 2022, (Dkt. No. 35).

## II.  Discussion

### A. Standard of Law

"Under Rule 15(a), where a party cannot amend as a matter of course, '[a] party may amend its pleading only with the opposing party's written consent or the court's leave,' however, '[t]he court should freely give leave when justice so requires.'"  *Falls v. Pitt*, No. 16-CV-8863, 2020 WL 2097626, at *2 (S.D.N.Y. May 1, 2020) (quoting Fed. R. Civ. P. 15(a)(2)).  While the Court "has discretion to deny leave [to amend] for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party . . . outright refusal to grant the leave without any justifying reason for the denial is an abuse of discretion."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200–01 (2d Cir. 2007) (quotation marks and citations omitted); *New Amsterdam Capital Partners, LLC v. Wilson*, No. 11-CV-9716, 2015 WL 1137576, at *2

(S.D.N.Y. Mar. 13, 2015) ("[R]easons for a proper denial of leave to amend include undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." (citation omitted)).  Thus, in deciding whether to grant a motion to amend a pleading, the Court considers "(i) whether the party seeking the amendment has unduly delayed; (ii) whether that party is acting in good faith; (iii) whether the opposing party will be prejudiced; and (iv) whether the amendment will be futile."  *Sandler v. Montefiore Health Sys., Inc.*, No 16-CV-2258, 2017 WL 2226599, at *2 (S.D.N.Y. May 22, 2017).

> B. Analysis

>> 1. Undue Prejudice, Undue Delay, Bad Faith

Undue prejudice speaks to "whether the amendment will require the opposing party to expend significant resources in discovery and whether resolution of the dispute will be delayed." *Kirkland-Hudson v. Mount Vernon City School District*, No. 21-CV-695, 2022 WL 1555606, at *2 (S.D.N.Y May 16, 2022) (quoting *E.E.O.C. v. Morgan Stanley & Co.*, 211 F.R.D. 225, 227 (S.D.N.Y. 2002)).  Further,

> the degree of potential prejudice a motion to amend may cause is evaluated against
> the overall progress of the litigation: the closer to the end of discovery or the closer
> to trial a motion to amend is filed, the more likely that it will cause prejudice and
> delay to the nonmoving party.

*Foster v. UPS Freight, Inc.*, No. 18-CV-10294, 2020 WL 5350446, at *5 (S.D.N.Y Sept. 4, 2020) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).  The opposing party bears the burden "of demonstrating that substantial prejudice would result were the proposed amendment to be granted." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016) (citation omitted).

Here, the Court does not find that amendment of the Complaint would cause undue prejudice to Defendants.  The proposed changes do not substantially alter the scope of fact

discovery.  (*See, e.g.*, PAC ¶ 27 (adding that 95% of the officers were male); *id.* ¶ 35 (adding

specific conversation between Plaintiff and Defendant Taggart).)  Moreover, no discovery has

been conducted, and the present Motions represent the entirety of the motion practice in this

Action thus far.  Courts in the Second Circuit have granted motions to amend where the parties

had progressed significantly farther in the litigation.  *See, e.g.*, *Washington v. Dewey*, No. 17-

CV-1316, 2019 WL 1921939, at *2 (D. Conn. Apr. 30, 2019) ("Courts have granted motions to

amend where the litigation has progressed significantly, even past discovery, on the grounds that

absent a showing of prejudice, leave to amend should be freely given."); *Pall Corp. v. Entegris,*

*Inc.*, No. 05-CV-5894, 2007 WL 9709768, at *2 (E.D.N.Y May 5, 2007) (allowing the plaintiff

to amend the complaint while noting that there was no undue prejudice where "[a]t the time

defendant made its motion, fact discovery had not yet closed" and "expert discovery ha[d] not

begun").

As to delay, in the Second Circuit, "[m]ere delay, . . . absent a showing of bad faith or

undue prejudice, does not provide a basis for a district court to deny the right to amend." *State*

*Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (citation omitted);

*see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000) ("[W]e have held

repeatedly that 'mere delay' is not, of itself, sufficient to justify denial of a Rule 15(a) motion

. . . ." (citation omitted)).  Where a significant period of time has passed prior to filing a motion

to amend, however, the moving party must provide an explanation for the delay.  *See Park B.*

*Smith, Inc. v. CHF Industries Inc.*, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) (describing burden

to explain extended delay and collecting cases).  The court has discretion to "deny leave to

amend 'where the motion is made after an inordinate delay, no satisfactory explanation is offered

for the delay, and the amendment would prejudice' other parties.'" *Barkai v. Nuendorf*, No. 21-CV-4060, 2022 WL 268100, at *2 (S.D.N.Y. Jan. 27, 2022).

Here, Plaintiff has provided explanations for the delay. Plaintiff explains that the initial Notice of Claim was completed by a predecessor firm, and Plaintiff's current counsel did not receive a fully executed copy of their retainer agreement until late April 2021. (Pl.'s Mem. of Law in Supp. of Mot. to Amend ("Pl.'s Mot. to Amend Mem.") 8–9 (Dkt. No. 23).) Because the statute of limitations for Plaintiff's claims was approximately May 20, 2021, Plaintiff's counsel had only a matter of days and limited information with which to file the Complaint. (*See id.*) Plaintiff's counsel further explained that Plaintiff's incarceration and transfer from one facility to another limited counsel's ability to speak with her, and therefore also limited the information that was included in the original Complaint. (*Id.* at 9.) In line with applicable caselaw, the Court finds that the explanations offered for the delay are satisfactory. *See e.g.*, *Securitas Elec. Sec., Inc. v DeBon*, No. 20-CV-5323, 2022 WL 484943, at *2 (S.D.N.Y. Feb. 17, 2022) (finding explanations satisfactory when the plaintiff failed to uncover a document among a "voluminous amount of other material" and later filed a motion to amend); *Washington,* 2019 WL 1921939, at *2 (finding explanations satisfactory when the plaintiff did not receive a signification portion of the documentary discovery and the transcript).

Moreover, the delay is not unduly long. Plaintiff filed her Motion To Amend on January 10, 2022—approximately eight months after filing the Complaint in state court on May 19, 2021. (*See* Compl; Not. of Mot. to Amend.) Courts within the Second Circuit have granted motions to amend despite significantly longer delays. *See, e.g.*, *Contrera v Langer*, 314 F Supp 3d 562, 575 (S.D.N.Y. 2018) (allowing amendment two years after the original complaint was filed even when the plaintiffs had the knowledge of the claims they sought to add at the outset of the

litigation, noting that "mere delay absent a showing of bad faith or undue prejudice does not provide a basis . . . to deny the right to amend"); *Valentini v. Citigroup, Inc.*, No. 11-CV-1355, 2013 WL 4407065, at *7 (S.D.N.Y. Aug. 16, 2013) (finding delay of eighteen months "insufficient ground to warrant denial of [a] motion to amend" where non-moving party "failed to establish bad faith or undue prejudice"); *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 98 (S.D.N.Y. 2010) (allowing amendment two and one-half years after case began and noting that "even vague or 'thin' reasons [for delay] are sufficient, in the absence of prejudice or bad faith" (citation omitted)).

Regarding bad faith, "when the opponent of an amendment asserts that the movant is acting in bad faith, there must be something more than mere delay or inadvertence for the court to refuse to allow amendment." *Primetime 24 Joint Venture v. DirecTV, Inc.*, No. 99-CV-3307, 2000 WL 426396, at *5 (S.D.N.Y. Apr. 20, 2000); *see also Blagman v. Apple, Inc.*, No. 14-CV-5453, 2014 WL 2106489, at *3 (S.D.N.Y. May 19, 2014) ("To the extent that the defendants claim that [the plaintiff's] delay was strategic, . . . they provide no showing of bad faith apart from the delay itself."); *Randolph Found. v. Duncan*, No. 00-CV-6445, 2002 WL 32862, at *3 (S.D.N.Y. Jan. 11, 2002) ("[T]he fact that a party may have had evidence to support a proposed amendment earlier in the litigation does not, by itself, give rise to an inference of bad faith."). Here, Defendants do not appear to argue that Plaintiff's Motion To Amend was made in bad faith. Nor does the Court find any evidence of bad faith.

The Court therefore finds that Defendants "ha[ve] not demonstrated that [Plaintiff] has acted with undue delay, in bad faith, or with any dilatory motive. Nor ha[ve] [Defendants] established that [they] would suffer undue prejudice if [Plaintiff] is permitted to amend [her] complaint." *SBI Invs. LLC, 2014-1 v. Eventure Interactive, Inc.*, No. 17-CV-4159, 2018 WL

2417847, at *5 (S.D.N.Y. May 28, 2018) (granting the plaintiff leave to file an amended complaint).

   2. Futility

  "To determine whether a proposed pleading is futile, courts analyze whether it would withstand a motion to dismiss." *Agerbrink*, 155 F. Supp. 3d at 456 (citation omitted); *see also AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010) ("Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." (citation omitted)). A motion for leave to file an amended answer should not be denied on the basis of futility "unless the proposed amendment is clearly frivolous or facially insufficient . . . the court should not consider its substantive merits but should grant leave to amend and allow the opposing party to subsequently test the merits of the amendment through a dispositive motion." *Tiffany (NJ) Inc. v. eBay Inc.*, No. 04-CV-4607, 2006 WL 8461405, at *1 (S.D.N.Y. 2006). "The opposing party must establish that granting leave to amend would be futile." *Blagman*, 2014 WL 2106489, at *5 (citation omitted); *see also Sotheby's, Inc. v. Minor*, No. 08-CV-7694, 2009 WL 3444887, at *3 (S.D.N.Y. Oct. 26, 2009) (citing same principle).

  Plaintiff's counsel argues that the PAC includes new allegations that sufficiently plead violations of law, based on the additional facts learned upon the release of Plaintiff. (*See* Pl.'s Mot. to Amend Mem. 9; *see also* PAC ¶ 27 (adding that 95% of the officers were male); *id.* ¶ 35 (adding specific conversation between Plaintiff and Defendant Taggart)).

  The Court "cannot determine at this point that [] [P]laintiff's amendment would be futile." *Twahir v. Vill. Care of N.Y., Inc.*, No. 10-CV-9452, 2011 WL 2893466, at *1 (S.D.N.Y. July 12, 2011); *see also Alfadda v. Fenn*, No. 89-CV-6217, 1993 WL 307757, at *2 (S.D.N.Y.

1993) (reaching same conclusion). This is because "[w]hen amendments raise colorable claims, especially where they are based upon disputed facts, they should be allowed, and a comprehensive legal analysis deferred to subsequent motions to dismiss or for summary judgment." *Goston v. Potter*, No. 08-CV-478, 2010 WL 4774238, at *5 (N.D.N.Y. Sept. 21, 2010), *report and recommendation adopted*, 2010 WL 4736261 (N.D.N.Y. Nov. 16, 2010) (collecting cases); *see also WIXT Television, Inc. v. Meredith Corp.*, 506 F. Supp. 1003, 1010 (N.D.N.Y. 1980) (permitting amendment given that dispute regarding merits of claim "can best be considered in the context of the motions to dismiss and for summary judgment."). Further,

> the fact that futility may sometimes constitute a reason for denial of a motion to amend is not a general invitation to explore the merits of novel proposed claims or to raise defenses that require analysis of matters outside the pleadings. The futility defense to a motion to amend is not, in short, a substitute for a motion to dismiss or a motion for summary judgment.

*Livingston v. Trustco Bank*, No. 20-CV-1030, 2021 WL 6199655, at *2 (N.D.N.Y. Apr. 23, 2021).

The Court is mindful of judicial economy and preserving the parties' resources. *See In re "Agent Orange" Prod. Liab. Litig.*, 220 F.R.D. 22, 25 (E.D.N.Y. 2004) (considering "impact of granting leave on judicial economy"). The Second Circuit has noted that "[w]here a plaintiff seeks to amend its complaint while a motion to dismiss is pending, a court 'may either deny [the] pending motion to dismiss as moot or consider the merits of the motion, analyzing the facts as alleged in the amended pleading.'" *Env't Sols. Assocs. Grp., LLC v. Conopoco, Inc.*, No. 20-CV-10699, 2021 WL 2075586, at *1 (S.D.N.Y. May 24, 2021) (quoting *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020)). As the Second Circuit has explained, this approach "promotes judicial economy by obviating the need for multiple rounds of briefing addressing complaints that are legally insufficient." *Pettaway*, 955 F.3d at 303. Moreover,

"[w]here the proposed amendment requires leave of court, the preferred course is to grant leave to amend even if doing so renders moot the motion to dismiss, rather than granting the motion to dismiss and rendering moot the motion for leave." *Conopoco*, 2021 WL 2075586, at *1 (quotation marks omitted); *Sosa v. Bentis Fresh Bread Inc.*, No. 20-CV-04705, 2021 WL 4267528, at *3 (S.D.N.Y. Sept. 20, 2021) (same).  It is therefore in the interest of judicial economy for Plaintiffs to amend now rather than after a ruling on Defendant's Motion To Dismiss.

On this point, the Court is also mindful that amendment under Rule 15 is designed to afford litigants the "maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *Bond v. Nolan*, No. 89-CV-357, 1994 WL 132139, at *1 (S.D.N.Y. Apr. 11, 1994); *see also Kirkland-Hudson*, 2022 WL 1555606, at *3 (same).  "In the interests of judicial economy and in the absence of undue prejudice, the Court may decline to engage in a detailed futility analysis where the Court finds that these arguments are better suited for consideration in the context of a motion to dismiss." *Conopoco*, 2021 WL 2075586, at *2; *see also Chan v. City of New York*, No. 19-CV-7239, 2021 WL 6502292, at *5 (E.D.N.Y. Dec. 29, 2021) (same); *In re Madison Asset LLC*, 2021 WL 1894032, at *2 (S.D.N.Y. May 11, 2021) (same).

By reason of Defendant's Motion To Dismiss, Plaintiff is on notice of the alleged deficiencies in its pleading.  Plaintiff is warned that the Court will be reluctant to grant further leave to amend if Defendant successfully moves to dismiss the Second Amended Complaint.  As the Second Circuit has explained:

> When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy

district court need not allow itself to be imposed upon by the presentation of theories seriatim.

*Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257–58 (2d Cir. 2018) (alteration, quotation marks, and citations omitted); *see also Valverde v. Folks*, No. 19-CV-08080, 2020 WL 5849515, at *13 (S.D.N.Y. 2020).

### III. Conclusion

For the forgoing reasons, including " the stage of litigation, the nature of the proposed amendments, and the minimal prejudice the proposed amendments bring to bear on Defendants, Plaintiff's  cross-[M]otion to [A]mend is granted," *McCormick v. Spano*, No. 19-CV-2916, 2021 WL 6052161, at *2 (S.D.N.Y. Dec. 20, 2021), and Defendants' Motion To Dismiss is denied as moot.

Plaintiff may file an amended complaint within 30 days of the date of this Opinion & Order.  Plaintiff is advised that the amended complaint will replace, not supplement, the instant Complaint, and therefore must contain all of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider.  If Plaintiff fails to abide by the 30-day deadline, her claims may be dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motions.  (Dkt. Nos. 14, 23, 34.)

SO ORDERED.

DATED:      July 7, 2022
            White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE