𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔆𝔬𝔲𝔯𝔱
𝔖𝔬𝔲𝔱𝔥𝔢𝔯𝔫 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 𝔑𝔢𝔴 𝔜𝔬𝔯𝔨

------------------------------------------------------------X

JANE DOE,

                              *Plaintiff*,                              21-cv-6751(KMK)


                    *v.*                                **AMENDED
                                                        COMPLAINT AND
                                                        JURY TRIAL
                                                        <u>DEMAND</u>**


COUNTY OF ROCKLAND, ROCKLAND COUNTY
SHERIFF'S OFFICE – CORRECTIONS DIVISION,
ROCKLAND COUNTY CORRECTIONAL CENTER,
its employees JOHN DOE/JANE DOE,
ROCKLAND COUNTY SHERIFF'S OFFICE,
its employees C.O. CHRISTOPHER TAGGART
and C.O. JOHN KEZEK, and JOHN DOES/JANE
DOES 1-4, individually and in their official
capacity; (the names John and Jane Does
being fictitious as the true names of all
are presently unknown),
                              *Defendants*.

------------------------------------------------------------X

By this pleading, Plaintiff, by and through her attorneys, METCALF &

METCALF, P.C., 99 Park Avenue, 6th Floor, New York, New York 10016, claims

against Defendants, and sets forth and alleges upon information and belief the

following:

## <u>NATURE OF THE CASE</u>

1.      This action arises from serious physical and psychological injuries

Plaintiff suffered at the hands of corrections officers, while a detainee in the custody

of the Defendants, including a particularly prolonged, sadistic, physical, and sexual

assault committed by several officers. In addition to the prolonged sadistic assault, Plaintiff was subjected to additional sexual assaults, unjustified excessive force, and restraint.

2.      Plaintiff's claims arise from a series of incidents that started on November 27, 2019, and upon information and belief have continued up until the present day. This series of events still poses a daily threat to JANE to this day because no matter what jail JANE gets transferred to the are prisoners[1] and staff that want to harm JANE.

3.      Plaintiff seeks compensatory and punitive damages for deprivation of her Constitutional rights and an award of costs, and such other further relief as the Court deems just and proper.

## JURISDICTION AND VENUE

4.      This Court has federal-question jurisdiction over the claims arising out of violations of the United States Constitution, through 42 U.S.C. § 1983, under 28 U.S.C. §§ 1331 and 1343. It has supplemental jurisdiction over pendent state law claims under 28 U.S.C.§ 1367(a).

5.      Plaintiff complied with the requirements of New York City General

---

[1] Upon information and belief, Defendant Taggart had similar relationships with other woman prisoners in the past, and these women have become jealous and revengeful after hearing about JANE; these woman in prior relationships with Defendant Taggart have threatened to harm JANE as a result of her interactions with Officer Taggart.

Municipal w§ 50-i. She made and served a notice of claim on all municipal defendants. More than thirty days have elapsed since the service of those notices, and no offer of settlement has been made. A Notice of Claim was filed and served on all Defendants to the within action more than thirty days before the filing of this Summons and Complaint.

6.     Specifically, on or about November of 2020, a Notice of Claim served on Defendants, and then followed with an Amended Notice of Claim in February 2021.

7.     On December 14, 2020, Plaintiff testified under at a hearing pursuant to Section 50- h of the General Municipal Laws.

8.     The hearing was memorialized in a 120-page transcript.

9.     Therefore, in light of this, pursuant to 28 U.S.C. § 1391(b), venue is proper in the Southern District of New York, the judicial district in which the claims arose and in which the Defendants conducted business.

## PARTIES

10.     At all times hereinafter mentioned, Plaintiff JANE DOE is a resident of the County of Rockland and the State of New York.

11.     Upon information and belief, at all times hereinafter mentioned, defendant COUNTY OF ROCKLAND (hereafter "Defendant Rockland County") was and still is a Municipal corporation doing business in the State of New York,

duly organized and existing under and by virtue of the laws of the State of New York.

12.     That at all times hereinafter mentioned, defendant ROCKLAND COUNTY SHERIFF'S OFFICE – CORRECTIONS DIVISION (hereafter "Defendant Rockland Sheriff") was and still is a Municipal corporation doing business in the State of New York, duly organized and existing under and by virtue of the laws of the State of New York.

13.     That at all times hereinafter mentioned, the defendants C.O. CHRISTOPHER TAGGART (hereafter "Defendant Taggart" or "Defendant Officer Taggart"), C.O. JOHN KEZEK, and JANE DOE/JOHN DOES's 1-4 (hereafter collectively referred to as "individual Defendants") were employees of Defendant Rockland County and Defendant Rockland Sheriff, acting in their capacity as correction officers under code of law.

14.     At all times hereinafter mentioned, the individually named defendants CHRISTOPHER TAGGART, JOHN KEZEK, and JOHN DOES, JANE DOES 1 - 4 were duly sworn correction officers (hereafter referred to as "Officers") of Rockland County acting under the supervision of the Rockland County Sheriff's Office - Corrections Division and according to their official duties and employees of the County. As used herein, "officer" includes employees of Rockland County and the Rockland County Sheriff's Office - Corrections Division, whose responsibilities include guarding inmates, and supervising the guarding of inmates, regardless of

rank.

15.     At all times hereinafter mentioned, Defendants CHRISTOPHER
TAGGART, JOHN KEZEK, JOHN DOES and JANE DOES 1-4, (hereinafter,
collectively, the "Individual Defendants") were acting within the scope of their
authority and under color of state law and/or in compliance with the official rules,
statutes, ordinances, regulations, laws, policies, customs, usages and/or practices of
Rockland County and the Rockland County Sheriff's Office- Corrections Division.

16.     New York State has recognized the coercive power that corrections
officers wield over incarcerated women, and the related risk of rape and sexual
abuse, and has criminalized all activity between incarcerated individuals and
correctional staff in New York Penal Law Section 130. 05 (3) (f), New York Penal
Law Section 130.25(1), and New York Penal Law Section 130.40(1).

17.     Pursuant to CPLR Section 1602(2)(iv), defendants are jointly and
severally liable for all of plaintiff's damages, including but not limited to plaintiff's
non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason
of the fact that defendants owed the plaintiff a non-delegable duty of care.

18.     Pursuant to CPLR Section 1602(7), defendants are jointly and
severally liable for all of plaintiff's damages, including but not limited to plaintiff's
non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason
of the fact that defendants acted with reckless disregard of the safety of others.

19.     Pursuant to CPLR Section 1602(2)(iv), defendants are jointly and severally liable for all of plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of CPLR Section 1601, by reason of the fact that defendants are vicariously liable for the negligent acts and omissions of others who caused or contributed to the plaintiff's damages.

20.     This action sounds in intentional tort and negligence.

21.     The Plaintiffs seek monetary damages against the defendants for, *inter alia*, cruel and unusual punishment, assault and battery; intentional infliction of emotional distress; negligence; negligent hiring, supervision, and retention, and interest, cost, and disbursements; and attorney's fees.

22.     Additionally, the Plaintiffs seek punitive damages and compensatory damages against the defendants.

23.     That by reason of the foregoing, this plaintiff has been damaged in an amount which exceeds the monetary jurisdictional limits of any and all lower Courts which would otherwise have jurisdiction herein, in an amount to be determined upon the trial of this action.

## **FACTS**

24.     On or about May 8, 2019, JANE was arrested for an assault, and was not able to make bail. Immediately upon her arrest on this date, she was housed at Rockland County Jail, located at 55 New Hempstead Road, New City, New York.

25.    She remained incarcerated in Rockland County Jail from May 8, 2019, until February 20, 2020.

26.    She was incarcerated on May 8, 2019, in Rockland County. During my incarceration at Rockland County, and was placed the F-wing, at the top level of the "pod" in cell 14. Rockland County had individual cells, and the pod was made up of 22 cells.

27.    Her cell was in a "dead zone", an area where there is no direct surveillance from the security cameras or other staff or prisoners.

28.    The officers would usually do eight-hour shifts; every pod had 2 officers. One of the officers would be in the control room, while the other officer was always in the pod, on guard duty. Although Jane cell was in a "dead zone" there were many cameras throughout the entirety of the pod and the control room.  This was probably because 95% of the officers were male.

29.    On February 20, 2020, JANE was transferred to Orange County Jail, where she remained in Orange County Jail until July 8, 2020, when she finally was released on her own recognizance.

30.    While at the Rockland County Jail, JANE was only housed in one unit, known as the F-wing.

31.    As highlighted in the Notice of Claim, this matter began on or about November 27, 2019, when Officer, Individual Defendants Mick and Kezek were

working the day tour. Individual Defendants Mick ordered a shift lock for JANE having a hair tie. A shift tie is a disciplinary action, where JANE must be locked in her cell for the entire time Defendant Mick was on his eight-hour shift.

32. The officers would usually do eight-hour shifts; every pod had 2 officers. One of the officers would be in the control room, while the other officer was always in the pod, on guard duty. Although Jane's cell was in a "dead zone" there were many cameras throughout the entirety of the pod and the control room. This was probably because 95% of the officers were male.

33. In or around July 2019, Jane first met Defendant Taggart. Defendant Taggart began to befriend her around this time. Upon information and belief, Defendant Taggart was assigned as the "Pod Officer" in the F-Wing from 3:00 P.M. until 11:00 P.M.

34. As time went on Defendant Taggart started conversing with Jane on a regular basis; he would ask her how her case was, or how she was feeling on that specific day. He would spend several hours during each of his shifts in front of her cell speaking to her.

35. Upon information and belief, this began to upset some of the other inmates because of the favoritism he was showing by spending too much time by Jane's cell, given the fact that her cell was in a "dead zone" the cameras would have revealed that he was entering her location but not exiting. This went on for months

on end.

36.     In or around August 2019, those normal conversations began to become more personal and sexual. As time went on those conversations were directly sexual with Defendant Taggart asking; "can you let me eat your pussy and ass?", "will you be my girlfriend?"

37.     It is important to reiterate that these sexual conversations would take place with him standing in front of Jane's cell. Each time he was working in her pod they conversed for significant amounts of time. It came to a point where he even went so far as letting her out of her cell to speak with him when his shift changed from working within the pod to working in the control room.

38.     Defendant Taggart also brought in contraband for Jane on more than one occasion including alcohol, food, and a burner phone which he used to speak with Jane. He also promised to keep Jane's family informed on how she was doing. By the fifth time that he brought contraband in for her he began to ask what she would do in exchange for him to continue bringing in contraband. At that point in time, he began asking Jane to undress for him, and during cell inspections asked to smell her underwear.  As mentioned, her cell was in a "dead zone" this was common knowledge to everyone, and convenient for Defendant Taggart to have me perform such a sexual act.

39.     Jane being in the position she was in, she apprehensively engaged in

conversations, and obeyed his demands for her to disrobe[2]. She was in a very vulnerable position at this point in her life and she began to become out of touch with what was real and what was fantasy. She could not clearly see at that point and time just how much she was being taken advantage of.

40.     Despite the fact that even a cursory review of the recordings of the pods would have demonstrated the inappropriateness of Defendant Taggart's behavior, she received no protection from the facility in preventing her adherence to Defendant Taggart's sexual demands.

41.     On or about November 27, 2019, Defendant Kezek and Officer "Mick" were working the day tour. Mick placed Jane on a "shift lock"[3] for possession of contraband (a hair tie). She was locked in her cell for the remainder of Mick's shift. Mick then ordered her to clean the drains located in the yard.

42.     As she was cleaning the drains, Officer Kezek made sexual remarks about Jane. After jane finished cleaning the drains, she was locked back into her cell. Officer Kezek then approached her cell and remarked that the pictures she had on her desk were the same photos she had on her Instagram account, he then said that "he did things to the photos on his time off," as he was telling Jane he became visibly

---

[2] In a correctional facility or state prison, failure to obey a "direct order" from a corrections officer or other staff member can result in disciplinary action.

[3] "Shift lock," or "keeplock" is a form of temporary punishment where a prisoner is confined to their cell.

erect as he spoke to her about her photos.

43.    Officer Kezek and Mick then unlocked her cell door and Officer Kezek took out his penis and masturbated for 40 to 60 seconds while standing in front of Jane's cell. After he finished, Officer Kezek then zipped his pants back up and closed the door behind him. Jane experienced anxiety upon seeing Officer Kezek after this incident.

44.    Although this was the first time that Officer Kezek had entered her cell and masturbated in front of her, this was not the first time that Officer Kezek had acted inappropriately within the pod. Officer Kezek on numerous occasions would intervene in conversations that other inmates and Jane were having and made inappropriate sexual comments. Jane recalls on one occasion him in detail explaining how he likes to cum all over female's faces while he gets oral sex. Jane also recalled another occasion where he was telling another inmate that he could help her masturbate. On yet another occasion Jane also recalled him claiming that he couldn't wait until he found one of the inmates in town because he wanted to "tear her up." All of these conversations took place within the pod.

45.    In addition to the sexual harassment and abuse Jane received from Officer Taggart, and Officer Kezek, it was widespread and the culture of the facility, for many officers to on numerous occasions make inappropriate sexual comments both directly and indirectly to inmates. For instance, Jane recalls on several

occasions Officer "F", from another section of the jail, who was not assigned to the women's wing, would casually come by, and check out the inmates, making sexually inappropriate comments about their bodies including their breasts and other intimate parts. Jane also recalls another Officer would call the inmates "bitches" and made comments about slapping the inmates with his d**k if you didn't lock in.

46.     JANE now became even more scared after these interactions and did not immediately inform anyone. Every day after this incident, JANE experienced anxiety upon seeing Defendant Kezek.

47.     JANE then reported the incident to the jail Chaplain, and quickly noticed that the lieutenants and sergeants began treating JANE differently.

48.     On or around December 12, 2019, I spoke with the Jail Chaplin surrounding the incidents with Officer Kezek, and she told a superior officer. On December 14, 2019, I was told to write a statement about my encounters with Officer Kezek. Because of prison culture, once people found out I submitted a formal complaint I was labeled a "rat", "dub", "undercover" any many more inappropriate comments by several officers, in front of the rest of the inmates.

49.     Then on or about December 12, 2019, after JANE continued experiencing bad dreams and nightmares about being raped and stabbed and experiencing anxiety attacks, JANE then reported the incident to her psychiatrists.

50.     Shortly after JANE reporting the incident with Defendant Kezek, word

spread throughout the jail, fast. Suddenly, various members of the inmate population and among the staff were talking about the incident.

51.　　Defendant Officer Taggart then approached JANE and told her that other officers were making fun of Defendant Kezek in the locker room.

52.　　On or about December 14, 2019, JANE made a written formal complainant against Defendant Kezek.

53.　　Less than a month later, JANE was labeled "a rat", where officers refused to provide JANE necessary daily supplies, and called her a rat in Spanish.

54.　　JANE was also called "a rat" in front of the entire pod, which was overheard by all the other prisoners.

55.　　The environment that JANE was now a part of was toxic, troubling, and left her in constant, everyday fear for her safety. JANE was then subject to being summoned to different private rooms and being video and tap recorded.

56.　　Up until this point JANE, after making informal and formal complaints about Defendant Kezek, was still subject to having to interact with Defendant Kezek during each of his shifts.

57.　　Defendants, including superior officers failed to protect JANE from continued harassment. The culture in the jail was one where, Officers are not held accountable for flagrant and constant sexual harassing comments are unchecked and disciplinary actions are never taken.

58.     Even after Jane made a written complaint regarding the actions of Officer Kezek, he was still not removed from the women's wing, he was just moved from the F-wing. Jane would still see him if he came up and spoke to other officers, this would cause Jane great anxiety as she was concerned for my safety.

59.     Also, during this time, Defendant Officer Taggart entered the picture and completely took advantage of JANE. Defendant Officer Taggart fooled JANE into thinking that Defendant Officer Taggart cared about JANE. Notably, she was in an extremely vulnerable position as a female prisoner who complained about a male officer being sexually inappropriate with JANE. Defendant Officer Taggart attempted to begin an intimate relationship with JANE in telling her how the two could be together when JANE got of jail. Defendant Taggart made JANE feel as if Defendant Taggart was looking out for JANE's safety and was protecting her against the harassment and abuse from the other guards and staff.

60.     During this time Defendant Taggart also capitalized on Jane's vulnerable state and continued to engage in his inappropriate relationship with her, by continuing to speak with her about sexually inappropriate things, continued to ask her to disrobe, and continued to enter her cell as he had in the past.

61.     With respect to Officer Taggart, he:

> • Began acting inappropriately toward Jane beginning in July 2019 and continuing until January 2020, when he was reprimanded and suspended following a review of phone calls

between him and Plaintiff by the facility;

•   He engaged in inappropriate conversations with Jane, most of which were sexual in nature, for a significant amount of time while on his shift. The conversations would occur in front of Plaintiff's cell or in the teleport, which was right outside of the control room;

•   Officer Taggart was assigned to Jane's wing and worked approximately 5 to 6 days a week for approximately 8 to 11 hours each shift;

•   Officer Taggart would enter Jane's cell, unaccompanied by another officer, which is against policy and procedure; and

•   On several occasions Officer Tagart would ask to smell Jane's underwear, smell her urine, touch her underwear, asked for her tampons to smell.

62.    Jane grew so anxious and fearful that she reached out to the District Attorney's Office to have a transfer of facility. Despite their request for her transfer, the jail refused, and she remained in Rockland County Jail until February 20, 2020.

63.    In January 2020 the facility began to place additional security cameras, and upon information and belief, Defendant Taggart was disciplined because the facility had been listening to his phone calls which revealed his misconduct.

64.    Defendants Rockland County and the Rockland Sheriff knew or should have known how Defendant Officer Taggart did the same thing with other woman prisoners in the past, while these other women were housed at Rockland County jail.

These women later learned about Defendant Officer Taggart's interest in JANE and these women have threatened JANE's safety for even speaking with Defendant Officer Taggart.

65.     Defendant Officer Taggart would then force JANE to do sexual favors for him, and forced JANE to show her body, in sexual positions to Defendant Officer Taggart, solely for Defendant Officer Taggart's sexual gratification.

66.     If JANE would pose naked for Defendant Officer Taggart, he would then smuggle JANE prison contraband such as alcohol. Defendant Officer Taggart would force JANE to call him on his "burner" phone when he was not working, as to keep him posted as to what was occurring when Defendant Officer Taggart was not working a shift. Defendant Officer Taggart would even visit JANE's family, and before doing so accumulated a bunch of information about JANE's family to hold over JANE's head.

67.     Defendants Rockland County and the Rockland Sheriff knew or should have known that Defendant Officer Taggart was a person who utilized his position as a correction officer to manipulate the exceptionally vulnerable female prisoners, and Defendants, including its supervisors took no actions to protect JANE.

68.     Defendant Taggart, having to do with the allegations in this matter, was originally indicted in July 2020 on two counts of promoting prison contraband, a felony, and several counts of official misconduct as misdemeanors. He pled guilty

in county court and was sentenced to two years of probation. "As a condition of the plea, Taggard had to resign as a corrections officer in the county sheriff's office." *See* Mid Hudson News, *Rockland County Corrections Officer Pleads Guilty*, April 11, 2021, available at https://midhudsonnews.com/2021/04/11/rockland-county-corrections-officer pleads-guilty/. "Taggard's guilty plea 'closes the prosecution of an officer wo violated his oath to protect and serve the inmates of the Rockland County Jail,' said District Attorney Tom Walsh." *Id.*

69.      Although JANE did not need daily medical attention, Defendants Rockland County, and the Rockland Sheriff failure to keep Defendant Kezek in a separate area from JANE, caused her greater anxiety and daily concern for her own safety. Finally, on or about February 20, 2020, JANE was transferred to Orange County Jail, but the fear for her safety did not cease to be present and very real, every day. Even in Orange County jail or Bedford Hills, word spreads fast: JANE has been labeled "a rat" and other women who thought they were in a relationship with Defendant Taggart have threatened JANE's safety. The fear JANE lives with on a daily basis is known among the prisoners and staff and used against JANE everyday she has spent in a jail within close proximity to Rockland County correctional.

## AS AND FOR A FIRST CAUSE OF ACTION
## (CRUEL AND UNUSUAL PUNISHMENT)
## <u>(As against all Defendants)</u>

70.     Plaintiffs repeat and reiterate each and every allegation set forth in paragraphs "1" through "69" with the same force and effect as if more fully set forth at length herein.

71.     Individual Defendants, who were Officers, sworn to uphold the law and protect those in their care and custody, sexually used and abused Plaintiff for their own gratification.

72.     Individual Defendants, who were Officers, manipulated and took advantage of Plaintiff JANE, thereby placing her in a constant state of fear for her safety.

73.     Individual Defendants, who were Officers, had the intent to use their power and control as Correctional Officers to humiliate, control, and violate Plaintiff JANE.

74.     Plaintiff was demeaned, used for sexual gratification, and feared retaliation if she did not comply with the aforementioned demands by the Defendants, some of which were sexual in nature.

75.     Defendants Rockland County and Rockland Sheriff knew or should have known of the abuse of Plaintiff yet disregarded same and allowed Plaintiff to be sexually exploited by Defendants Rockland County and Rockland Sheriff's

servants, agents and/or employees.

76.     Defendant's conduct shocks the conscious and causes irreparable emotional harm to Plaintiff JANE.

77.     Accordingly, Defendants Rockland County, Rockland Sheriff, and the individual Defendants, who were officers are liable to Plaintiff JANE under New York State Law and the United States Constitution, Eighth Amendment, for cruel and unusual punishment.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(CIVIL RIGHT VIOLATIONS UNDER**
**42 U.S.C. § 1983 AND 42 U.S.C. § 1985)**
**(As against all Defendants)**

78.     Plaintiffs repeat and reiterate each and every allegation set forth in paragraphs "1" through "77" with the same force and effect as if more fully set forth at length herein.

79.     Individual Defendants, collectively and individually, assaulted, sexually assaulted, battered, unlawfully confined, unlawfully restrained, depriving Plaintiff JANE of her rights, remedies, privileges, and immunities guaranteed by the United States, in violation of rights enforceable under 42 U.S.C. § 1983, including, without limitation, rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution.

80.     Individual Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective

employment with the Defendants Rockland County and the Rockland Sheriff. Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of her constitutional rights secured by 42 U.S.C. § 1983 and by the Fifth and Fourteenth Amendments to the United States Constitution.

81.     Individual Defendants are liable for their use of excessive and unlawful force where there was no reason or provocation to exercise force on Plaintiff, Defendants actions were wanton, sadistic, and malicious and the deprivation suffered by Plaintiff was serious and harmful, in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

82.     Individual Defendants are liable for their excessive and unlawful restraint where there was no reason or provocation to exercise such restraint on Plaintiff. Defendants' actions were wanton, sadistic, and malicious and the deprivation suffered by Plaintiff was serious and harmful, in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

83.     Individual Defendants are liable for their deliberate indifference to Plaintiff's welfare and safety in violation of the Fifth and Fourteenth Amendments Individual Defendants are liable for their deliberate indifference to Plaintiff's welfare and safety in violation of the Fifth and Fourteenth Amendments of the United States Constitution in that each had knowledge that Plaintiff faced a substantial risk of serious harm and disregarded that risk in failing to take reasonable

steps to abate the harm.

84.      Individual Defendants are liable for denying and placing Plaintiff JANE in a position where she faced a substantial risk of serious harm and disregarded that risk in failing to take reasonable steps to abate the harm.

85.      Individual Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment with the Defendants Rockland County and the Rockland Sheriff. Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of her constitutional rights secured by 42 U.S.C. § 1983 and by the Fifth and Fourteenth Amendments to the United States Constitution.

86.      As a direct and proximate result of the conduct detailed herein, Plaintiff suffered the damages described herein.

## AS AND FOR A THIRD CAUSE OF ACTION
### (ASSAULT & BATTERY)
### (As against all Defendants)

87.      Plaintiffs repeat and reiterate each and every allegation set forth in paragraphs "1" through "86" with the same force and effect as if more fully set forth at length herein.

88.      All Defendants acted in concert and individually, acting under color of law, committed assault and battery against Plaintiff JANE.

89.      Defendants aided and abetted the assault and battery on Plaintiff

JANE.

90.     Defendants conspired in the assault and battery on Plaintiff JANE.

91.     Defendants intentionally acted to place JANE in apprehension of imminent harmful or offensive bodily contact, and JANE suffered apprehension of imminent harmful or offensive bodily contact.

92.     On numerous occasions, Defendants verbally threatened JANE with words that placed JANE in danger, such as the labeling her "a rat".

93.     Coupled, Defendant's words and actions acted to place JANE in apprehension of imminent harmful or offensive bodily contact.

94.     JANE cowered in fear on these occasions, thus demonstrating that JANE suffered apprehension of imminent harmful or offensive bodily contact.

95.     Accordingly, Defendants assaulted JANE.

96.     Defendants' conduct was without justification or cause and against Plaintiff's will.

97.     Defendants Rockland County and the Rockland Sheriff are liable to Plaintiff for Defendants' conduct under the doctrine of *respondent superior*.

98.     As a direct and proximate result of the conduct detailed herein, Plaintiff suffered the damages described herein.

99.     As a result of Defendant's actions, JANE has suffered damages in an amount that exceeds the jurisdictional limits of all lower courts which would

otherwise have jurisdiction.

**AS AND FOR A FOURTH CAUSE OF ACTION
(INTENTIONAL INFLICTION OF EMOTIONAL
DISTRESS)
<u>(As against all Defendants)</u>**

100.    Plaintiffs repeat and reiterate each and every allegation set forth in paragraphs "1" through "99" with the same force and effect as if more fully set forth at length herein.

101.    The conduct of individual Defendant Officers as employees of Defendants Rockland County and the Rockland Sheriff, was extreme, outrageous, shocking, and exceeded all reasonable bounds of decency.

102.    All and each of the Defendant's conduct toward Plaintiff JANE was extreme and outrageous conduct, which was intended to cause and did cause severe emotional distress to Plaintiff.

103.    Plaintiff JANE suffered severe emotional distress as a result of Defendant's conduct.

104.    Accordingly, each and every Defendant intentionally inflicted emotional distress upon JANE.

105.    As a direct and proximate result of the conduct detailed herein, Plaintiff suffered the damages because each and every Defendant engaged in extreme and outrageous conduct with the intent to cause, or disregard of a substantial

probability of causing, severe emotional distress to Plaintiff JANE.

## AS FOR A FIFTH CAUSE OF ACTION
## (RECKLESS DISREGARD FOR THE SAFETY OF INMATES
## AND FAILURE TO PROTECT)
## (As against all Defendants)

106.   Plaintiffs repeat and reiterate each and every allegation set forth in paragraphs "1" through "105" with the same force and effect as if more fully set forth at length herein.

107.   Defendants Rockland County and the Rockland Sheriff City, in addition to individual defendants exercised deliberate indifference and cruelty, extreme recklessness, and intent to a known and probable risk to Plaintiff JANE. Each and every Defendant's failure to take remedial actions and allowing Plaintiff JANE to live in a dangerous environment, one in which subjected her to become so pervasive by allowing herself to be sexual assaulted, sexually abused, and sexual harassment by staff is incomprehensible.

## AS FOR A SIXTH CAUSE OF ACTION
## (FAILURE TO INTERVENE)
## (As Against Defendants Rockland County and the Rockland Sheriff)

108.   Plaintiffs repeat and reiterate each and every allegation set forth in paragraphs "1" through "107" with the same force and effect as if more fully set forth at length herein.

109.   Defendants Rockland County and the Rockland Sheriff and individual

defendants had a reasonable opportunity to prevent the violations of Plaintiff's Constitutional rights but failed to intervene.

110.    Defendants Rockland County and the Rockland Sheriff and individual defendants, as Officers had actually failed to protect Plaintiff JANE, causing her to be further victimized.

111.    Accordingly, each and every Defendants are liable to Plaintiff for failing to intervene to prevent the violation of Plaintiff's constitutional rights.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### (NEGLIGENCE)
### <u>(As Against All Defendants)</u>

112.    Plaintiff's repeat, reiterate and re-allege each and every allegation contained in paragraphs "1" through "111" of their Complaint with the same force and effect as if set forth at this point.

113.    Defendants Rockland County and the Rockland Sheriff, their agents, servants, and/or employees owed a duty to JANE to provide her with proper, adequate, or sufficient security at the aforesaid premises.

114.    Defendants Rockland County and the Rockland Sheriff, their agents, servants, and/or employees breached this duty by failing to provide JANE with proper, adequate, or sufficient security at the aforesaid premises.

115.    As a result of said negligence, Plaintiff JANE became sick, sore, lame and disabled, received severe and serious injuries in and about diverse parts of her

person, and suffered great physical pain, distress, mental shock, mental anguish, and psychological trauma, and was otherwise injured.

116.    Defendants' failure to provide Plaintiff JANE with proper, adequate, or sufficient security at the aforesaid premises was the proximate cause of the injuries sustained by JANE.

117.    As a result of Defendants' actions, Plaintiff JANE has suffered damages in an amount that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

118.    By reason of the foregoing, Plaintiff JANE has suffered damages in an amount that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

**AS AND FOR AN EIGHTH CAUSE OF ACTION**
**(NEGLIGENT HIRING, SUPERVISION, OR RETENTION)**
**(As Against Defendants Rockland County and the Rockland Sheriff)**

119.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in paragraphs "1" through "118" of their Complaint with the same force and effect as if set forth at this point.

120.    Defendants Rockland County and the Rockland Sheriff and the individual defendants were in employer-employee relationship.

121.    Defendants Rockland County and the Rockland Sheriff knew of the

individual defendant's propensity to commit tortious acts or should have known of such propensity had Defendants Rockland County and the Rockland Sheriff conducted an adequate hiring procedure.

122.    Defendants Rockland County and the Rockland Sheriff PERKINS COIE hired, supervised and/or retained PAI despite his propensity to commit tortious acts.

123.    Consequently, JANE suffered damages proximately caused by Defendants Rockland County and the Rockland Sheriff's negligent hiring, supervision, or retention of the individual defendants and a substantial act of physical violence was committed on Defendants Rockland County and the Rockland Sheriff's premises.

124.    JANE sustained numerous injuries because of all Defendant's actions, including, but not limited to JANE having to undergo substantial therapy and psychological treatment.

125.    As a result of Defendants Rockland County and the Rockland Sheriff's negligent hiring, supervision, or retention of individual Defendants, JANE has suffered damages in an amount that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## AS AND FOR AN NINTH CAUSE OF ACTION (NEGLIGENT INFLICTION OF EMOTION DISTRESS)
### <u>(As Against All Defendants)</u>

126.    Plaintiff's repeat, reiterate and re-allege each and every allegation contained in paragraphs "1" through "125" of their Complaint with the same force and effect as if set forth at this point.

127.    At all material times, all defendants owed a duty to use the same degree of skill and care that others in the same profession in the community would reasonably use in the same or similar circumstances with respect to all aspects of the services promised, including in the selection, hiring, training, supervision and monitoring of any and all agents, employees, representatives, contractors, and vendors the defendant would use in caring for those similarly situated as Plaintiff JANE.

128.    The defendants, however, breached these duties, and failed to use the same degree of skill and care that others in the same profession in the community would reasonably use in the same or similar circumstances.

129.    As a direct and foreseeable result of the defendants' acts and omissions and breach of its duties, Plaintiff JANE has suffered injuries and damages, including severe emotional distress.

## PUNITIVE DAMAGES

130.    The allegations contained in the preceding paragraphs are incorporated as if fully set forth herein.

131.    The defendants' conduct described herein was intentional, outrageous, oppressive and in reckless and/or wanton disregard for the rights of the Rodriguez family and the serious injuries reasonably foreseeably caused by the conduct.

132.    Plaintiff JANE is, therefore, entitled to punitive damages from the defendants in such amount as shall be necessary and appropriate to punish the defendant and to deter it and anyone else from ever committing similar indecencies upon an individual in Plaintiff JANE's position.

## DEMAND FOR JURY TRIAL

133.    A jury trial is demanded.

## PRAYER FOR RELIEF

134.    Wherefore, Plaintiffs respectfully demand and requests judgment against the Defendants as follows:

(a) An award of compensatory damages, jointly and severally against the defendants, in an amount exceeding the monetary jurisdictional limits of all lower courts which would otherwise have jurisdiction, to be determined by the jury;

(b) An award of punitive damages to punish these defendants and to deter them and all others from ever engaging in such conduct again;

(c) An award for pre-judgment and post-judgment interest and recovery of Plaintiff's costs, including reasonable attorneys' fees pursuant to 42

U.S.C. § 1988 for all 42 U.S.C. § 1983 claims;

(d) For a trial by jury;

(e) An award of costs, including but not limited to discretionary costs, attorneys' fees and expenses incurred in pursuing this case; and

(f) Granting such other and further relief as this Court shall deem just and proper.

Dated: New York, New York
      August 5, 2022                  Respectfully Submitted,

*Steven Metcalf*

STEVEN A. METCALF II, ESQ.
*Attorneys for Plaintiff*
Metcalf & Metcalf, P.C.
99 Park Avenue, 6th Floor
New York, NY 10016
(*Phone*) 646.253.0514
(*Fax*) 646.219.2012
metcalflawnyc@gmail.com
fedcases@metcalflawnyc.com