UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JANE DOE,

                                        Plaintiff,

        v.

COUNTY OF ROCKLAND, *et al.*,

                                        Defendants.

---

No. 21-CV-6751 (KMK)

OPINION & ORDER

Appearances:

Steven A. Metcalf II, Esq.
Metcalf & Metcalf, P.C.
New York, NY
*Counsel for Plaintiff*

Matthew R. Hughes, Esq.
Robert B. Weissman, Esq.
Saretsky Katz & Dranoff, LLP
Elmsford, NY
*Counsel for Defendants County of Rockland, Rockland County Sheriff's Office-Corrections
Division, Rockland County Correctional Center, and Rockland County Sheriff's Office*

KENNETH M. KARAS, United States District Judge:

        Jane Doe ("Plaintiff"), formerly incarcerated at the Rockland County Jail (the "Jail"),

brings the instant Action pursuant to 42 U.S.C. § 1983 and state law against the County of

Rockland (the "County") and its employees Correction Officers Christopher Taggart

("Taggart"), John Kezek ("Kezek"), and Jane Does/John Does 1–4 (collectively, "Defendants").

(*See* Am. Compl. (Dkt. No. 38).)[1]

---

[1] Plaintiff also sues the County as the "Rockland County Sheriff's Office-Corrections
Division," the "Rockland County Correctional Center," and the "Rockland County Sheriff's
Office." (*See* Am. Compl.)  Defendants Taggart and Kezek have not appeared in this Action.
(*See generally* Dkt.)

Before the Court is the County's Motion To Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion to Dismiss"), (*see* Not. of Mot. To Dismiss (Dkt. No. 43)), and Plaintiff's Motion To Amend the Complaint pursuant to Federal Rule of Civil Procedure 15(a) (the "Motion To Amend"), (*see* Not. of Mot. To Amend (Dkt. No. 53)).  For the reasons stated below, the County's Motion To Dismiss is granted and Plaintiff's Motion To Amend is denied.

## I.  Background

### A.  Materials Considered

The Parties have submitted several declarations, affirmations, and accompanying exhibits in support of their arguments.  (*See generally* Decl. of Robert B. Weissman, Esq. in Supp. of County's Mot. To Dismiss ("Weissman Decl.") (Dkt. No. 44); Decl. of Lt. John Byron in Supp. of County's Mot. To Dismiss ("Byron Decl.") (Dkt. No. 45); Pl's Mem. of Law in Opp'n to County's Mot. To Dismiss ("Pl's Opp'n") (Dkt. No. 51); Reply Affirm. of Robert B. Weissman, Esq. ("Weissman Reply Affirm.") (Dkt. No. 61).)[2]

Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the pleadings themselves," because "[t]o go beyond the allegations in the Complaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to [Rule] 56." *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002). "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment." *Id.*; *see also Bellin v. Zucker*, 6 F.4th 463,

---

[2] Because the Court is denying Plaintiff's Motion To Amend as moot, the Court declines to evaluate the documents Plaintiff attached in support of her Motion.  (*See* Affirm. of Steven A. Metcalf in Supp. of Motion To Amend ("Metcalf Reply Affirm.") (Dkt. No. 67).)

473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety . . ., documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (quotation marks and citation omitted)); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken.'" (alteration omitted) (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993))).

The County has submitted the following documents in support of its Motion:

1.   A report written by Rev. Teresa A. Darden, dated December 12, 2019, documenting Plaintiff's report to her that an officer had exposed his penis to her, (Weissman Decl. Ex. B (Dkt. No. 44-2));

2.   A declaration from Lt. John Byron, the Rockland County Correctional Facility grievance lieutenant, (Byron Decl.);

3.   The Rules and Regulation of the Rockland County Correctional Facility ("RCCF Rules"), (Byron Decl. Ex. A (Dkt. No. 45-1));

4.   A transcript of Taggart's plea allocution hearing which took place on April 8, 2021, (Weissman Reply Affirm. Ex. A (Dkt. No. 61-1));

5.   A transcript of Kezek's plea allocution hearing which took place on December 22, 2021, (Weissman Reply Affirm. Ex. B (Dkt. No. 61-2));

6.   A felony complaint filed on April 26, 2016 in connection with the Count's arrest of Randolfo Ventillo ("Ventillo" and as to the document, the "Ventillo Complaint"), (Weissman Reply Affirm. Ex. C (Dkt. No. 61-3));

7.   An information filed on October 13, 2016 in connection with the County's prosecution of Ventillo ("Ventillo Information"), (Weissman Reply Affirm. Ex. D (Dkt. No. 61-4)).

The County does not provide any argument as to why the Court may consider the first three documents.  (*See generally* Mem. of Law in Supp. of Mot. To Dismiss ("County's Mem.") (Dkt.

No. 46).)  None of these documents is referenced in the Amended Complaint.  (*See generally* Am. Compl.)  With one exception—the RCCF Rules—none of these documents is a proper subject of judicial notice, *see Berkley v. City of New Rochelle*, No. 21-CV-578, 2022 WL 784018, at *3 (S.D.N.Y. Mar. 15, 2022) (declining to consider exhibits attached to defendant's submissions because they were not incorporated by reference or integral to the complaint or a proper subject of judicial notice).  Thus, the Court will take judicial notice of only the RCCF Rules because they are regulations "promulgated by an administrative agency and thus a proper subject for judicial notice."  *Barrette v. Village of Swanton*, No. 22-CV-00129, 2023 WL 3891034, at *3 (D. Vt. June 6, 2023); *see also Rafiy v. County of Nassau*, No. 15-CV-6497, 2017 WL 33597, at *4 (E.D.N.Y. Jan. 4, 2017) ("[I]t is axiomatic that a court may take judicial notice of relevant law and administrative regulations, either at the request of a party or *sua sponte*, including on a motion to dismiss.").

        As to the last four documents, the County has argued that the Court may take judicial notice of them because the Taggart and Kezek Allocutions are transcripts of public court proceedings and the Ventillo Complaint and Information are documents filed in a criminal case before another court.  (County's Reply 22–23 n.6, 24 n.9 (Dkt. No. 62).)  The Court agrees but will consider the documents for the fact that they exist, not the truth of the matters asserted therein.  *See Ferranti v. Arshack, Hajek & Lehrman PLLC*, No. 20-CV-2476, 2021 WL 1143290, at *3 (S.D.N.Y. Mar. 24, 2021), *appeal withdrawn*, No. 21-1245, 2021 WL 3575023 (2d Cir. June 23, 2021) ("The [c]ourt may take judicial notice of a document filed before another court and may consider such documents for the fact that they exist, but not for the truth of the matters asserted therein. (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)); *Hutchins v. Solomon*, No. 16-CV-10029, 2018 WL 4757970, at *7 (S.D.N.Y. Sept. 29, 2018) (taking judicial

notice of filings in a court case submitted by a party "only to establish the fact of such filings and what they contained, not for the truth of the matter asserted therein" (citation omitted)); *see also Ventillo v. Falco*, No. 19-CV-3664, 2020 WL 7496294, at *5 n.11 (S.D.N.Y. Dec. 18, 2020) (taking judicial notice of Ventillo Complaint and Information).

Plaintiff has attached her own declaration, dated December 28, 2022, (Decl. of Jane Doe (Dkt. No. 51-1)).[3]  Plaintiff has not made any arguments as to why the Court should consider this document.  (*See generally* Pl's Opp'n.)  The Court declines to consider the declaration.  *See Wachtel v. Nat'l R.R. Passenger Corp.*, No. 11-CV-613, 2012 WL 292352, at *2 (S.D.N.Y. Jan. 30, 2012) (declining to consider plaintiff's affidavit attached to opposition to motion to dismiss because "the [c]ourt cannot consider affidavits in ruling on a motion to dismiss").

B.  Factual Background

The following facts are drawn from Plaintiff's Complaint and are taken as true for the purposes of resolving the instant Motions.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

On or about May 8, 2019, Plaintiff was arrested for assault and incarcerated at the Jail. (Am. Compl. ¶¶ 24–25.)  While at the Jail, Plaintiff was housed by herself in "[C]ell 14" in the top level of a pod.  (*Id.* ¶ 26.)[4]  Plaintiff's pod was located in the "F-wing," and Plaintiff was

_____

[3] Plaintiff has also attached to her Opposition a copy of the Proposed Second Amended Complaint, along with a declaration from a woman who Plaintiff seeks to join to the case as a co-Plaintiff and exhibits thereto.  (*See* Proposed Second Amended Compl. (Dkt. No. 51-5); Decl. of Jane Doe 1 ("Doe 1 Decl.") (Dkt. No. 51-6); Doe 1 Decl. Ex. A (Dkt. No. 51-2); Doe 1 Decl. Ex. B (Dkt. No. 51-3).)  However, the Court will not consider these documents because they are the subject of the pending Motion To Amend, which the Court is denying as moot.
Plaintiff has also attached a news article to her Opposition which she does not reference in her Opposition or any other filing, so the Court declines to consider it.  (Pl's Opp'n. Ex. C (Dkt. No. 51-4).)

[4] Plaintiff's pod was made up of 22 cells.  (Am. Compl. at ¶ 26.)

only housed in the "F-wing" while at the Jail.  (*Id.* ¶ 30.)  Plaintiff's cell was located in a "dead zone," where there was no direct surveillance from security cameras or other staff or prisoners. (*Id.* ¶ 27.)[5]  There were many cameras throughout the pod and the control room.  (*Id.* ¶ 28.) Every pod had two officers who usually worked eight-hours shifts.  (*Id.*)[6]  One of the officers was in the control room, while the other officer was always in the pod.  (*Id.*)

### 1. Taggart

Plaintiff met Taggart in or around July 2019, and soon thereafter he began to befriend her.  (*Id.* ¶ 33.)  Plaintiff alleges that Taggart was assigned as the "pod officer" in the "F-wing" from 3:00 PM to 11:00 PM and worked "approximately 5 to 6 days a week[.]"  (*Id.* ¶¶ 32, 61.) As time went on, Taggart began conversing with Plaintiff on a regular basis and would spend several hours during each shift in front of Plaintiff's cell speaking with her.  (*Id.* ¶ 34.)  Plaintiff alleges that other inmates became upset because of the "favoritism" Taggart showed Plaintiff by spending "too much time" by her cell.  (*Id.* ¶ 35.)  In or around August 2019, Plaintiff alleges that the "normal conversations," with Taggart became "more personal and sexual" and, eventually, "directly sexual" with Taggart requesting to engage in oral sex with Plaintiff.  (*Id.* ¶ 36.)  Plaintiff alleges that, at some point, Taggart "went so far as letting her out of her cell to speak with him when his shift changed from working within the pod to working in the control room."  (*Id.* ¶ 37.)  Taggart also promised to keep Plaintiff's family "informed on how she was doing."  (*Id.* ¶ 38.)

On multiple occasions, Taggart brought in contraband for Plaintiff, including alcohol, food, and a burner phone, which he used to speak with Plaintiff.  (*Id.*)  Plaintiff alleges that after

---

[5] Plaintiff alleges it was "common knowledge to everyone" that her cell was in a "dead zone."  (Am. Compl. ¶ 38.)

[6] Plaintiff alleges that 95% of the officers were male.  (Am. Compl. ¶ 28.)

the fifth time Taggart brought contraband in for her, he began asking Plaintiff to undress for him and also began asking, during cell inspections, to smell her underwear.  (*Id.*)  Plaintiff also alleges that Taggart "would ask to . . . smell her urine, touch her underwear, [and] asked for her tampons to smell."  (*Id.* ¶ 61.)  Plaintiff "obeyed [Taggart's] demands for her to disrobe."  (*Id.* ¶ 39.)

Plaintiff alleges that during and after her encounter with Kezek in November 2019, described below, Taggart continued to engage in an inappropriate relationship with her, including speaking to her about "sexually inappropriate" matters, asking her to disrobe, and entering her cell.  (*Id.* ¶ 60.)  Plaintiff alleges that she was in "an extremely vulnerable position as a female prisoner who complained about a male officer being sexually inappropriate," and Taggart "fooled [Plaintiff] into thinking that [he] cared about [her] . . . [and] attempted to begin an intimate relationship . . . [by] telling her how the two would be together when [she] got [out] of jail."  (*Id.* ¶ 59.)  Plaintiff alleges that Taggart made Plaintiff "feel as if [he] was looking out for [her] safety and was protecting her against the harassment and abuse from the other guards and staff."  (*Id.*)

Taggart forced Plaintiff to call him on the "burner" phone when he was not on shift, to keep him posted as to what was occurring when he was not working.  (*Id.* ¶ 66.)  Plaintiff alleges that Taggart accumulated information about Plaintiff's family and visited them in order to gather information to "hold over [Plaintiff's] head."  (*Id.*)

In January 2020, Taggart was reprimanded and suspended following a review by the Jail of the phone calls between him and Plaintiff.  (*Id.* ¶¶ 61, 63.)  Plaintiff states that in connection with the allegations in this matter, Taggart was indicted in July 2020 on two felony counts of

promoting prison contraband and several misdemeanor counts of official misconduct.  (*Id.* ¶ 68.)
Taggart was sentenced to two years of probation and resigned as a corrections officer.  (*Id.*)

Plaintiff alleges that the County "knew or should have known [that Taggart had done] the
same thing with other woman prisoners in the past, while these other women were housed" in the
Jail and "that [Taggart] was a person who utilized his position as a correction[s] officer to
manipulate . . . exceptionally vulnerable female prisoners."  (*Id.* ¶¶ 64, 67.)  Plaintiff further
alleges that certain of these women with whom Taggart had relationships "learned about
[Taggart's] interest in [Plaintiff] and . . . have threatened [Plaintiff's] safety for even speaking
with [Taggart]."  (*Id.* ¶ 64.)

### 2.  Kezek and Mick

On or around November 27, 2019, "Mick" and Kezek were on the "day tour."  (Am.
Compl. ¶ 31.) [7]  Mick ordered an eight-hour shift lock for Plaintiff for having a hair tie.  (*Id.*)
Mick later ordered Plaintiff to clean the drains located in the yard.  (*Id.* ¶ 41.)  While Plaintiff
was cleaning the drains, Kezek made sexual remarks about her.  (*Id.* ¶ 42.)  After cleaning the
drains, Plaintiff was locked into her cell.  (*Id.*)

Kezek then approached Plaintiff's cell and remarked that the pictures Plaintiff had on her
cell desk were the same photos that she had posted on her Instagram account.  (*Id.*)  Kezek then
stated that he "did things to [Plaintiff's] photos on his time off[.]"  (*Id.*)  As he was making these
statements to Plaintiff, Kezek became visibly erect.  (*Id.*)  Kezek and Mick then unlocked
Plaintiff's cell door.  (*Id.* ¶ 43.)  Kezek stood in Plaintiff's cell doorway, took out his penis, and
masturbated for 40 to 60 seconds.  (*Id.*)  After he finished, Kezek zipped his pants back up and

---

[7] Plaintiff refers to "Mick" as an "Individual Defendant[,]" (Am. Compl. ¶ 31), but
"Mick" is not named in the case caption, (*see generally id.*).

closed the door behind him.  (*Id.*)  "Every day after this incident, [Plaintiff] experienced anxiety upon seeing . . . Kezek."  (*Id.* ¶ 46.)

Plaintiff alleges that this was the first time Kezek entered her cell but not the first time that Kezek had acted inappropriately in the pod.  (*Id.* ¶ 44.)  On numerous occasions, Plaintiff alleges Kezek intervened in conversations that other inmates and Plaintiff were having in the pod and made "inappropriate sexual comments[.]"  (*Id.*)

Plaintiff alleges that she did not immediately report these incidents with Kezek and Mick because she "became . . . scared."  (*Id.* ¶ 46)  On or about December 12, 2019, after she experienced bad dreams and nightmares about being raped and stabbed and experienced anxiety attacks, Plaintiff reported the incident to her psychiatrists.  (*Id.* ¶ 49.)  Plaintiff also reported the incident to the jail chaplain on December 12, 2019, and the chaplain told a superior officer.  (*Id.* ¶¶ 47–48.)  Plaintiff "quickly" noticed that lieutenants and sergeants "began treating [her] differently."  (*Id.* ¶ 47.)  On December 14, 2019, Plaintiff was told to write a statement about her encounters with Kezek.  (*Id.* ¶ 48.)

Plaintiff alleges that once "people" found out she had submitted a formal complaint, she was "labeled a 'rat,' 'dub,' 'undercover[,]' an[d] many more inappropriate" names by several officers in English and Spanish in front of "the rest of the inmates."  (*Id.* ¶¶ 48, 52–54.)  Plaintiff also alleges "word spread throughout the jail" about the incidents.  (*Id.* ¶ 50.)  Taggart told Plaintiff that "other officers were making fun of Kezek in the locker room."  (*Id.* ¶ 51.)  Officers also refused to provide Plaintiff necessary daily supplies.  (*Id.* ¶ 53.)  Plaintiff was allegedly "summoned to different private rooms and . . . video and tap[e] recorded."  (*Id.* ¶ 55.)

During this period, Plaintiff was "subject to having to interact" with Kezek during each of his shifts.  (*Id.* ¶ 56.)  At some point, Kezek was moved from the F-wing but remained

assigned to the women's wing of the Jail.  (*Id.* ¶ 58.)  Plaintiff would "still see him if he came up and spoke to other officers," which would "cause [Plaintiff] great anxiety . . . for [her] safety." (*Id.*)  Plaintiff alleges that the County's "failure to keep [Kezek] in a separate area from [her]" caused her anxiety and concern.  (*Id.* ¶ 69.)

### 3.  Culture of the Jail

Plaintiff alleges that "sexual harassment and abuse . . . [were] widespread and the culture of the facility[,]" as many officers on numerous occasions made inappropriate sexual comments directly to inmates.  (*Id.* ¶ 45.)  Specifically, Plaintiff avers that an "Officer 'F[,]'" who was not assigned to the women's wing of the Jail, would come by and make sexually inappropriate comments about female inmates' bodies and that another officer would call female inmates derogatory names linked to their gender and threaten to sexually assault them if they did not "lock in."  (*Id.*)  Plaintiff alleges that "superior officers failed to protect [her] from continued harassment . . . [and] [o]fficers [were] not held accountable for flagrant and constant sexual[ly] harassing comments . . .[as] disciplinary actions [were] never taken."  (*Id.* ¶ 57.)[8]

### 4.  Plaintiff's Transfer

Plaintiff alleges that at some point she "grew so anxious and fearful that she reached out to the District Attorney's Office to have a transfer of facility[,]" but the Jail refused.  (*Id.* ¶ 62.) However, on February 20, 2020, Plaintiff was transferred to Orange County Jail.  (*Id.* ¶ 69.) Plaintiff alleges that "word" about her relationship with Taggart "spread[ ] fast," and she was again labeled "a rat" and received threats from "other women who thought they were in a relationship with [Taggart]."  (*Id.*)  Plaintiff was released on her own recognizance from Orange County Jail on July 8, 2020.  (*Id.* ¶ 29.)

---

[8] Plaintiff alleges that in January 2020 the Jail began to install additional security cameras.  (Am. Compl. ¶ 63.)

C.  Procedural History

The Court had discussed the procedural background of this Action in a previous Opinion, (*see* Op. & Order (Dkt. No. 36)), and describes subsequent proceedings only as relevant to deciding the instant Motions.

On August 9, 2022, Plaintiff filed her Amended Complaint.  (*See* Am. Compl.)  On August 25, 2022, the County submitted a letter requesting a pre-motion conference to discuss filing a Motion To Dismiss.  (Letter from Robert B. Weissman, Esq, (Dkt. No. 39).)  After directing Plaintiff to respond and receiving a response, (Dkt. Nos. 40–41), the Court set a briefing schedule, (Order (Dkt. No. 42)).

On October 13, 2022, the County submitted its Motion To Dismiss and accompanying papers.  (Not. of Mot. To Dismiss; County's Mem.; Weissman Decl.; Byron Decl.)  After requesting and receiving two extensions, (Dkt. Nos. 47–50), Plaintiff filed her Opposition and accompanying papers on December 28, 2022.  (Pl's Opp'n.)

The next day, Plaintiff also filed her Motion To Amend and accompanying papers.  (Pl's Mot. To Amend.; Decl. of Jane Doe in Supp. of Pl's Mot. To Amend (Dkt. No. 55); Decl. of Jane Doe 1 in Supp. of Pl's Mot. To Amend (Dkt. No. 56).)  After requesting and receiving an extension to file a combined Opposition to Plaintiff's Motion To Amend and Reply in Support of its Motion To Dismiss, (Dkt. Nos. 57–58), the County filed its omnibus brief and accompanying papers on February 8, 2023.  (County's Reply; Weissman Reply Affirm.)[9]

---

[9] The County submitted a duplicate version of its Reply and Reply Affirmation to the docket.  (*See* Reply Affirm. of Robert Weissman, Esq. (Dkt. No. 63); County's Reply (Dkt. No 64).)

After requesting and receiving two extensions, (Dkt. Nos. 59–60, 65–66), Plaintiff filed her Reply in support of her Motion To Amend and accompanying papers on March 2, 2023. (Pl's Reply (Dkt. No. 67).)

The County sought and received leave from the Court to file a sur-reply contesting Plaintiff's Motion To Amend, (Dkt. Nos. 68–69), and filed its brief on March 23, 2023, (County's Sur-Reply (Dkt. No. 70)).

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the

12

reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B.  Analysis

1.  *Monell* Claim

Plaintiff alleges a *Monell* Claim against the County based on violations of her rights under the Fifth, Eighth, and Fourteenth Amendments.  (Am. Compl. ¶¶ 70–86.)[10]  The County

---

[10] Plaintiff has also asserted a claim for failure to intervene against the County.  (*See* Am. Compl. ¶¶ 108–111.)  The County argues that Plaintiff's claim must be dismissed because she has failed to adequately allege the elements of a failure to intervene claim.  (County's Reply 25–26.)  However, because the County could be liable for failing to intervene in constitutional

argues that Plaintiff's claim must be dismissed because she has not adequately alleged a widespread pattern or practice that subjected her to a deprivation of her Constitutional rights. (County's Mem. 16–23.)  Plaintiff argues that, drawing all inferences in her favor, she has alleged sufficient indicia of such a widespread pattern or practice.  (Pl's Opp'n 15–23.)

"To state a claim under [§ 1983], the plaintiff must show that a defendant, acting under color of state law, deprived him of a federal constitutional or statutory right." *Sykes v. Bank of Am.*, 723 F.3d 399, 405–06 (2d Cir. 2013).  "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). Thus, "to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury,* 542 F.3d 31, 36 (2d Cir. 2008); *cf. Salvatierra v. Connolly,* No. 09-CV-3722, 2010 WL 5480756, at *10 (S.D.N.Y. Sept. 1, 2010) (recommending dismissal of a claim against agencies where plaintiff did not allege that any policy or custom caused the deprivation of his rights), *adopted by* 2011 WL 9398 (S.D.N.Y. Jan. 3, 2011); *Arnold v. Westchester County*, No. 09-CV-3727, 2010 WL 3397375, at *9 (S.D.N.Y. Apr. 16, 2010) (recommending dismissal of a claim against county because complaint "does not allege the existence of an unconstitutional custom or policy"), *adopted as modified sub nom. Arnold v. Westchester Cnty. Dep't of Corr.*, 2010 WL 3397372 (S.D.N.Y.

---

violations committed by its employees only on a theory of municipal liability, the Court will not consider this claim independent of Plaintiff's *Monell* claim.  *See, e.g., Spencer v. Schenectady Police Dep't*, No. 20-CV-1316, 2021 WL 855862, at *3 (N.D.N.Y. Mar. 8, 2021) (sua sponte dismissing pro se plaintiff's failure to intervene claim against municipality with leave to replead a *Monell* claim).

14

Aug. 25, 2010).  The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor."  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y.2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right.").  In other words, a municipality may not be liable under Section 1983 "by application of the doctrine of *respondeat superior*."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986); *see also Vassallo v. Lando,* 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong" (emphasis in original)).  Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *City of Canton v. Harris,* 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik,* 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

"In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'"  *Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd,* 75 F. App'x 827 (2d Cir. 2003).  A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

Generally, "a custom or policy cannot be shown by pointing to a single instance of

unconstitutional conduct by a mere employee of the [municipality]." *Newton*, 566 F. Supp. 2d at

271; *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof

of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*,

unless proof of the incident includes proof it was caused by an existing, unconstitutional

municipal policy, which policy can be attributed to a municipal policymaker."); *Brogdon v. City*

*of New Rochelle,* 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is

generally insufficient to establish the affirmative link between the municipal policy or custom

and the alleged unconstitutional violation.").  In the end, therefore, "a plaintiff must demonstrate

that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged

injury." *Roe*, 542 F.3d at 37 (quoting *Brown*, 520 U.S. at 404); *see also Tuttle*, 471 U.S. at 824

n.8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to

satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind

a *constitutional* violation.  There must at least be an affirmative link between [for example] the

training inadequacies alleged, and the particular constitutional violation at issue." (emphasis in

original)); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal

link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of

liability against the [c]ity."); *Johnson v. City of New York*, No. 06-CV-9426, 2011 WL 666161,

at *3 (S.D.N.Y. Feb. 15, 2011) (noting that after demonstrating the existence of a municipal

policy or custom, "a plaintiff must establish a causal connection—an affirmative link—between

the policy and the deprivation of his constitutional rights" (internal quotation marks omitted)).

In order to establish *Monell* liability based upon a "persistent and widespread" practice by a subordinate municipal employee (or employees) other than a policymaker, the employee's unconstitutional conduct must be "so manifest as to imply the constructive acquiescence of senior policy-making officials." *Lucente v. County of Suffolk*, 980 F.3d 284, 297–98 (2d Cir. 2020) (quoting *Sorlucco* v. *N.Y.C. Police Dep't*, 971 F.2d 864, 870–71 (2d Cir. 1992)); *see also Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 532 (S.D.N.Y. 2012) ("[A] plaintiff must prove that the custom at issue is permanent and well-settled." (citing *Praprotnik*, 485 U.S. at 127)). "[A] custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [government]." *Bowen v. County of Westchester*, 706 F. Supp. 2d 475, 484 (S.D.N.Y. 2010) (quoting *Newton v. City of New York*, 566 F. Supp. 2d 256, 270–71 (S.D.N.Y. 2008)); *see also Tuttle*, 471 U.S. at 823–24.

The Court notes as a threshold matter that, due to deficient pleading of her sole cause of action alleging a Constitutional violation, Plaintiff has failed to allege an underlying violation of her Constitutional rights by the County or its employees, which is required to state a *Monell* claim. *See DeRaffele v. City of New Rochelle*, No. 15-CV-282, 2017 WL 2560008, at *6 (S.D.N.Y. June 13, 2017) ("It is well established that a *Monell* claim cannot lie in the absence of an underlying constitutional violation."); *see also Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action . . .; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." (emphasis omitted)).[11]  However,

---

[11]  The County correctly points out that Plaintiff's first cause of action is defectively pled because it alleges liability directly under the Constitution, and "no direct cause of action for damages exists pursuant to the Constitution."  (County's Mem. 16.)  *See Runge v. Collins*, No. 99-CV-9639, 2000 WL 726502, at *2 (S.D.N.Y. May 22, 2000) (explaining that "[v]iolations of an individual's constitutional rights by a [g]overnment official are actionable under 42 U.S.C.

the County has stated that this deficiency "is irrelevant since the *Monell* analysis . . . applies equally to claims under the Fourteenth Amendment," which the Court construes as a waiver which allows the Court to address the *Monell* claim on its own merits.  (County's Mem. 16 n.3.)  Thus, the Court will consider the Parties' contentions as to the sufficiency of Plaintiff's *Monell* claim.

The County argues that Plaintiff's widespread pattern or practice claim must fail as a matter of law because Plaintiff has made only vague allegations that supervisors were aware of

---

§ 1983, rather than directly under the United States Constitution" (citation omitted)).  As a result, Plaintiff's first cause of action must be dismissed because it fails as a matter of law.  However, Plaintiff incorporated the allegations concerning the Eighth Amendment violation into her second cause of action under 42 U.S.C. § 1983, (*see* Am. Compl. ¶ 78), so the Court reads the Amended Complaint as properly alleging the claim.

As to the merits of the Eighth Amendment claim, Plaintiff alleges that Kezek and Taggart's conduct violated her right under the Eighth Amendment to be free from cruel and unusual punishment.  (Am. Compl. ¶¶ 70–77.)  The County also correctly objects that Plaintiff's Eighth Amendment claim fails because she was a pre-trial detainee when the conduct at issue occurred.  (County's Mem. 16 n.3.)

Plaintiff alleges that she was arrested on or about May 8, 2019 for assault and incarcerated at the Jail, where she remained until she was transferred to Orange County Jail on February 20, 2020.  (Am. Compl. ¶¶ 24–25, 29.)  Plaintiff does not allege that her case went to trial, so even taking all of her statements as true, she was a pre-trial detainee at the time that the events recounted in her Amended Complaint occurred.  (*See generally id.*)  Claims by pre-trial detainees are properly brought under the Fourteenth Amendment.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment." (citations omitted)).  As the Second Circuit has explained, "[p]retrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise."  *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007) (quotation marks and citation omitted), *rev'd on other grounds sub nom.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

However, although the County has pointed out the deficiency in Plaintiff's pleading, the County has not moved to dismiss the Eighth Amendment claim on this specific basis, and the alleged individual perpetrators—Taggart and Kezek—have not appeared in this Action or filed a Motion To Dismiss challenging the sufficiency of this claim.  (*See* Dkt.)  Because Plaintiff's *Monell* claim against the County fails, the Court need not consider the merits of the underlying Constitutional violation as it is not properly before the Court at this juncture.  Plaintiff would be well-counseled to address this deficiency if she decides to amend her Complaint.

the conduct at issue.  (County's Mem. 16–23; County's Reply 20–23.)  Plaintiff argues in

response that she has adequately alleged sufficient facts to survive a Motion To Dismiss.  (Pl's

Opp'n at 15–18.)[12]

The Court finds that Plaintiff's *Monell* claim fails because she has not sufficiently alleged

a widespread pattern or practice.  Taking all of her allegations as true, Plaintiff has alleged that,

while she was incarcerated at the Jail from May 2019 to February 2020, Kezek, Mick, and

Taggart sexually harassed her.  *See supra* § I.B.1–2.  Plaintiff has also alleged that on an

indeterminate number of occasions, two other officers—Officer "F" and an unidentified

officer—made disparaging and sexually inappropriate remarks to female prisoners on occasion

when they were in the F-Wing when Plaintiff was present.  *See supra* § I.B.3.  Several instances

of alleged sexual harassment and additional instances of disparaging comments involving

---

[12] Plaintiff also argues that she has adequately pled *Monell* liability under a failure-to-train theory.  (Pl's Opp'n at 16–17, 20–21.)  However, as the County points out, (County's Reply 18–19), the Amended Complaint does not contain any factual allegations concerning the County's failure to train officers, (*see generally* Am. Compl.), and the only explicit reference to training occurs in connection with Plaintiff's claim for negligent infliction of emotional distress, (*id.* ¶ 127).  Because Plaintiff has not pled this theory of liability in the operative Amended Complaint, the Court declines to consider the argument.  *See Cortese v. Skanska Koch, Inc.*, No. 20-CV-1632, 2021 WL 429971, at *18 n.4 (S.D.N.Y. Feb. 8, 2021) ("[The] [p]laintiffs' argument fails for the simple reason that it was not pleaded and a party cannot amend its complaint through a brief."); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (finding that a plaintiff may not amend its complaint through its opposition brief); *Schulz v. Medtronic, Inc.*, No. 21-CV-414, 2022 WL 503960, at *2 (D. Conn. Feb. 18, 2022) ("[I]t is axiomatic that [a] [c]omplaint cannot be amended by the briefs in opposition to a motion to dismiss." (quoting *Weir v. City of New York*, No. 05-CV-9268, 2008 WL 3363129, at *9 (S.D.N.Y. Aug. 11, 2008))); *Red Fort Cap., Inc. v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456, 476 (S.D.N.Y. 2019) (same); *Clean Coal Techs., Inc. v. Leidos, Inc.*, 377 F. Supp. 3d 303, 321 (S.D.N.Y. 2019) (same).

The County has asserted that the Amended Complaint does not allege a formal policy or action by a final policymaker.  (County's Mem. 18.)  Plaintiff has not offered either of these theories in her opposition.  (*See generally* Pl's Opp'n.)  On an independent review of the Amended Complaint, the Court thus finds that neither of these theories is properly before the Court.  (*See generally id.*)

different low-level defendants, as troubling as they may be, are insufficient to support a claim of a widespread pattern or practice. *See Ayyaz v. City of New York*, No. 19-CV-1412, 2021 WL 1225684, at *3 (S.D.N.Y. Mar. 31, 2021), *reconsideration denied sub nom. Ayyaz v. Thaler*, No. 19-CV-1412, 2022 WL 837058 (S.D.N.Y. Mar. 21, 2022) (granting motion to dismiss on municipal liability claim where plaintiff had alleged only incidents involving herself and two defendants); *McLennon v. City of New York*, 171 F. Supp. 3d 69, 95–96 (E.D.N.Y. 2016) (finding that allegations of six incidents of unlawful seizures at traffic checkpoints were insufficient to show a municipal custom).

Additionally, Plaintiff has failed to allege that the County had actual or constructive notice of the alleged pattern of violations, as required by *Monell*. *See Lucente*, 980 F.3d at 297–98 (explaining that plaintiff must establish that employees' unconstitutional conduct was "so manifest as to imply the constructive acquiescence of senior policy-making officials"). In the Amended Complaint, Plaintiff asserts that the County "knew or should have known" of Taggart or Mick and Kezek's misconduct but does not describe how the County could have become aware of their conduct sooner than it did based on its monitoring of Taggart's phone conversations with Plaintiff or its acceptance of Plaintiff's complaint concerning Kezek's conduct. (Am. Compl. ¶¶ 64, 67.) Plaintiff's own allegations indicate that her cell was located in a dead zone where there was no surveillance camera coverage and that the relevant misconduct occurred in front of her cell. (*Id.* ¶ 27.) Plaintiff alleges that Taggart spent many hours in front of her cell and that another officer was in the control room during his shift, which allows for the inference that that officer may have been aware that Taggart was not patrolling. (*Id.* ¶¶ 28, 34.) Plaintiff also alleges that Mick assisted Kezek in harassing her, (*id.* ¶ 43), and the Court infers that Mick was working with Kezek to engage in misconduct and thus would be

20

unlikely to report that misconduct to the County.  Thus, Plaintiff's allegations support the inference that, at most, one low-level officer who was not personally involved in harassing her may have been aware of conduct on the part of Taggart that was irregular, but Plaintiff does not provide any explanation as to how, absent a number of unsupported inferences, the County could have been aware of Taggart or Kezek's misconduct.  *See Maroney v. Village of Norwood*, No. 19-CV-1404, 2020 WL 4284133, at *7 (N.D.N.Y. July 27, 2020) ("It is well established that isolated acts by non-policymaking officials do not ordinarily show a municipal custom or policy." (citing *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012))); *Khapesi v. City of New York*, No. 13-CV-4391, 2014 WL 2605342, at *8 (S.D.N.Y. June 10, 2014) (dismissing plaintiff's claim where finding municipality was on notice of alleged violations required "an interlocking chain of inferences built on inferences").

Finally, Plaintiff's claim fails because, based on her own allegations, the County did act to correct officers' misconduct when the County became aware of their actions.  According to Plaintiff's allegations, the County transferred Kezek to another part of the Jail after receiving her Complaint, (Am. Compl. ¶ 58), and the County monitored Taggart's phone calls with Plaintiff and then suspended him and later indicted him for the misconduct revealed by the monitoring, (*id.* ¶¶ 61, 63).  Such conduct is incompatible with a theory that the County was aware of a widespread pattern of sexual misconduct by corrections officers and failed to act.  *See Doe v. City of New York*, No. 18-CV-670, 2018 WL 3824133, at *9 (E.D.N.Y. Aug. 9, 2018) (dismissing widespread pattern claim where plaintiff's allegations indicated that municipality had responded to address officers' misconduct when made aware of it).

The Court thus dismisses Plaintiff's *Monell* claim because it fails for multiple, independent reasons.

### 2.  Abandonment

The County argues that Plaintiff has failed to respond to several of its arguments, thus conceding them.  (*See* County's Reply 14–16.)  The Court agrees that Plaintiff's opposition only challenges the County's arguments on Plaintiff's *Monell* claims.  (*See generally* Pl's Opp'n.)  Thus, the Court dismisses Plaintiff's third, fourth, and ninth causes of action, as "[a] plaintiff effectively concedes a defendant's arguments by [her] failure to respond to them."  *Felske v. Hirschmann*, No. 10-CV-8899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) (collecting cases); *see also Lopez Canas v. Whitaker*, No. 19-CV-6031, 2019 WL 2287789, at *5 (W.D.N.Y. May 29, 2019) ("It is well settled in this Circuit that a plaintiff effectively concedes a defendant's arguments by his failure to respond to them" (alteration and quotation marks omitted)); *Miles v. Walawender*, No. 10-CV-973, 2013 WL 1908304, at *1 (W.D.N.Y. May 7, 2013) ("[The] [p]laintiff's opposing [m]emorandum of [l]aw [] does not respond to this argument, and effectively concedes these arguments by his failure to respond to them." (alteration, citation, and quotation marks omitted)).

### 3.  State Claims

In light of the Court's dismissal of Plaintiff's Eighth Amendment, *Monell*, and failure to intervene claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims that Plaintiff has not conceded.  *See* 28 U.S.C. § 1367(c)(3) ("District courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction. . . .").  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt.*

*Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003)); *see also One Commc'ns Corp. v. JP Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010) (summary order) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims. . . ."); *Young v. Suffolk County*, 922 F. Supp. 2d 368, 397–98 (E.D.N.Y. 2013) (declining to exercise supplemental jurisdiction over state-law counterclaim after dismissing all federal claims).

### III.  Conclusion

For the foregoing reasons, Plaintiff's claims against the County are dismissed.  However, because this is the first adjudication of her claims on the merits, Plaintiff's claims are dismissed without prejudice.  If Plaintiff wishes to file an amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Order.  The amended complaint will replace, not supplement, the original and first amended complaint.  The failure to timely file an amended complaint may result in the dismissal of this Action with prejudice.  Because the Court is granting Plaintiff leave to amend her complaint, the Court finds that Plaintiff's pending Motion To Amend is moot and declines to consider it.

The Court noted in its previous opinion granting Plaintiff's Motion To Amend:  "Plaintiff is on notice of the alleged deficiencies in [her] pleading.  Plaintiff is warned that the Court will be reluctant to grant further leave to amend if [the County] successfully moves to dismiss the . . . Amended Complaint."  *Doe v. County of Rockland*, No. 21-CV-6751, 2022 WL 2533151, at *6 (S.D.N.Y. July 7, 2022).  The Court does not lightly make the decision to allow Plaintiff to amend her complaint again, given her almost complete failure to address deficiencies identified in the County's initial Motion To Dismiss.  The Court warns Plaintiff that the Court has, at most,

23

very limited tolerance for granting further amendments and, if the County again successfully moves to dismiss Plaintiff's complaint, such dismissal may be with prejudice.

The Clerk of Court is respectfully directed to terminate the pending motions. (*See* Dkt. Nos. 43, 53.)

SO ORDERED.

Dated:   September 22, 2023
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge